IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| GARY PERFATER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:17-cv-00722-NKL ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**ORDER**

Plaintiff Gary Perfater appeals the Commissioner of Social Security's final decision denying his application for disability insurance benefits under Title II of the Social Security Act. For the following reasons, the Court affirms the decision of the ALJ.

**I.  Background**

Perfater was born in 1957, and alleges that he became disabled beginning on June 13, 2013. He filed his initial application for Title II benefits on August 27, 2014. The ALJ held a hearing on June 27, 2016, and issued a decision denying benefits on July 19, 2016. After the Appeals Council declined to review the ALJ's decision, Perfater appealed to this Court.

To receive disability benefits under Title II, Perfater must establish that he was disabled before the expiration of his insured status. *See* 42 U.S.C. §§ 416(i), 423(c); *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998). Perfater's insured status expired on June 30, 2015. Tr. 191. However, evidence of a disability after that date remains relevant, "in helping to elucidate a medical condition during the time for which benefits might be rewarded." *Pyland*, 149 F.3d at 877 (citing *Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989)).

A.  **Medical history**

Perfater claims disability based primarily on Chronic Obstructive Pulmonary Disease (COPD), bilateral osteoarthritis of the hands, cervical degenerative disc disease, and bilateral carpal tunnel syndrome.

In March 2010, Perfater visited the Missouri Heart Center, reporting extreme fatigue, shortness of breath, episodes of hypotension, sweats, and chest pain. Tr. 425. His symptoms of fatigue and shortness of breath persisted over the next several years, and he was ultimately diagnosed with obstructive sleep apnea in May 2014. Tr. 261, 268, 386, and 416. Perfater's symptoms improved with the use of a CPAP machine, but he continued to experience daytime tiredness. Tr. 278.

In October 2014, Perfater began to report pain in both of his hands for the first time. Tr. 348. A medical examination revealed Bouchard's nodes and Heberden's nodes, and he was prescribed Medrol and Meloxicam. Tr. 350.

In January 2015, Perfater met with Dr. Dustin Keffer, who examined Perfater at the request of Disability Determinations. Perfater reported experiencing symptoms of shortness of breath, fatigue, and chest pain. Tr. 297. Dr. Keffer found Perfater's cardiac and pulmonary exams to be within the normal limits. Tr. 301. He also noted that Perfater's exam results would be consistent with rheumatoid arthritis, but Perfater had not had any laboratory work or a formal evaluation by a rheumatologist. *Id.*

In April 2015, Perfater returned to the Missouri Heart Center, and reported symptoms of fatigue and dyspnea, as well as chest pain accompanied by lightheadedness and diaphoresis. Tr. 392. He was advised to take nitroglycerin for the chest pain. Tr. 395. Perfater also continued to report symptoms of numbness, tingling, and paresthesia of the hands. Tr. 331. An April 2015 EMG revealed bilateral chronic carpal tunnel syndrome, Tr. 336, and a cervical MRI showed

2

degenerative disc disease with neural foraminal encroachment. Tr. 333. Perfater stated that neither medication nor wrist splints helped. Tr. 331.

In May 2015, Perfater visited Fitzgibbon Rheumatology, where he described pain in his fingers and hands that caused difficulty grasping or gripping. Tr. 451. An examination once again revealed Heberden's and Bouchard's nodes on both hands, as well as limited extension of the fingers on Perfater's 2nd through 4th fingers on his left hand. Tr. 454. Imaging of Perfater's hands showed mild osteoarthritis bilaterally. Tr. 322. An evaluation for occupational therapy revealed that Perfater's digits were in a flexed position for neutral position, there was redness at the joints, and swelling in both hands. Tr. 323. Perfater had decreased range of motion of bilateral digits and wrists and decreased strength of the bilateral hands. Tr. 324. Perfater later reported that he was unable to complete therapy due to his pain. Tr. 431.

In June 2015, Perfater described worsening arthritis symptoms in his fingers and hands, and was prescribed indomethacin. Tr. 431, 434. Still, his pain persisted.

In September 2015, Perfater received an injection after reporting that his hand pain rated a 9 on a pain scale. Tr. 446. Examination again revealed Bouchard and Heberden's nodes, and that Perfater kept his fingers in slight flex position.

**B.     The ALJ Decision**

The record does not contain any medical opinion evidence addressing Perfater's ability to function in the workplace. Nonetheless, the ALJ concluded that Perfater had the following severe impairments: COPD, bilateral osteoarthritis of the hands, cervical degenerative disc disease, and bilateral carpal tunnel syndrome. In light of these severe impairments and Perfater's non-severe afflictions, the ALJ concluded that Perfater had the residual functional capacity

> to perform medium work as defined in 20 CFR 404.1567(c) except he could frequently climb stairs or ramps. He could frequently perform tasks that require bilateral handling or fingering. He should have avoided concentrated exposure to

extreme cold, extreme heat, and humidity, as well as odors, dust, fumes, and other pulmonary irritants.

Tr. 27. Relying on vocational expert testimony, the ALJ concluded that Perfater was capable of performing his past relevant work as a laborer. Tr. 30. The ALJ also found, alternatively, that there were other jobs that existed in significant numbers in the national economy that Perfater could have performed, such as hospital cleaner and auto detailer. Tr. 31.

## II. Standard

The Court's review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *Id.* The Court must consider evidence that both supports and detracts from the Commissioner's decision, but cannot reverse the decision because substantial evidence also exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). If the Court finds that the evidence supports two inconsistent positions, and one of those positions represents the Commissioner's findings, then the Commissioner's decision must be affirmed. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

## III. Discussion

Perfater contends that the ALJ's RFC determination is not supported by substantial evidence because it is not adequately supported by at least "some medical evidence," and because the ALJ improperly evaluated Perfater's testimony.

### A. Medical Evidence to Support the RFC

Residual functional capacity refers to what a claimant can still do despite physical or mental limitations. 20 C.F.R. § 404.1545(a); *Masterson v. Barnhart,* 363 F.3d 731, 737 (8th Cir. 2004). An ALJ must formulate the RFC based on all of the relevant, credible evidence in the record. *See Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) ("Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.") (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). Evidence relevant to the RFC determination includes medical records, observations of treating physicians and others, and a claimant's own description of his limitations. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000) (citation omitted). The claimant has the burden to prove his or her RFC. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

While an ALJ is not limited to considering only medical evidence, there must be at least "some medical evidence" supporting the RFC determination. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000)). "Some medical evidence," however, need not include any medical opinions that address a plaintiffs' ability to function in the workplace. Instead, "mild or unremarkable objective medical findings and other medical evidence may constitute sufficient medical support for an RFC finding, even in the absence of any medical opinion evidence directly addressing the Plaintiff's ability to function in the workplace." *Snider v. Colvin*, No. 4:15-CV-641-SPM, 2016 WL 5076188, at *5 (E.D. Mo. Sept. 20, 2016) (citing *Steed v. Astrue*, 524 F.3d 872, 875-76 (8th Cir. 2008) (finding the ALJ's RFC properly supported when it was based on largely mild or normal objective findings)); *see also Haddan v. Berryhill*, 2017 WL 3704601, No. 3:16–cv–05101–DGK–SSA, at *2 (W.D. Mo. Aug. 28, 2017) (finding normal neurological examinations constituted medical evidence in support of the RFC).

In the present matter, it is undisputed that the record contains no medical opinion evidence from any source that addresses Perfater's ability to function in the workplace. The question, therefore, is whether the medical evidence that does exist in the record is sufficient to support Perfater's RFC. The Court finds that it is.

The ALJ's RFC determination relies on largely mild or normal objective medical findings, and therefore it is sufficiently supported by "some medical evidence." For example, in reviewing Perfater's medical record, the ALJ found a "wellness physical for work" in June 2014—approximately one year after Perfater's alleged onset date—to be "most notable," because Perfater reported that he had no complaints and his physical examination findings were unremarkable. Tr. 28-29 (citing Tr. 288-90). In finding that Perfater's COPD "is not that limiting," the ALJ relied on a September 2014 pulmonary function test that found "minimal" airway obstruction, and a January 2015 consultative examination that reflected "normal lung functioning." Tr. 29 (citing Tr. 284, 295-303).

Perfater focuses primarily on limitations with the use of his hands, and argues that clinical findings showing decreased range of motion, decreased strength, Bouchard's and Heberden's nodes, and slight flexion position of both hands are not mild or normal. Perfater did not complain of any hand pain until October 2014, however, which is well more than a year after his alleged onset date, and nearly two months after he filed his initial application for benefits. Accordingly, the record contains several medical examinations that are entirely unremarkable with regard to Perfater's hands. He denied any arthritic symptoms in June 2013, Tr. 262 and 407, was found to have no gross motor deficits in February 2014, Tr. 270 and 401, and denied any joint pain, muscle cramps, joint swelling, stiffness, arthritic complaints, muscle weakness, or loss of strength at his wellness physical for work" in June 2014. Tr. 288-89.

Even considering only the examinations that occurred after Perfater's first complaint of hand pain, there is sufficient medical evidence to support the ALJ's decision. For example, at a consultative examination in January 2015, Perfater's hands and fingers appeared normal, except for some "slight" ulnar deviation of the metacarpophalangeal (MCP) joint. Tr. 300. Additionally, while the ALJ acknowledged that some examinations revealed decreased range of motion and strength in Perfater's hands, she contrasted those findings with radiology that determined Perfater's osteoarthritis was only "mild" in degree, with evidence of "mild" diffuse changes of osteoarthritis bilaterally and "mild" osteophytosis at the metacarpal heads bilaterally. Tr. 29 (citing Tr. 322, 448). Finally, although an EMG confirmed bilateral carpal tunnel disease, and radiology confirmed cervical degenerative disc disease with disc bulging and neural foraminal encroachment, as well as thecal sac effacement, as the ALJ observed, there is no evidence that Perfater sought further treatment for either one of the impairments. Thus, it was reasonable for the ALJ to conclude that the diagnoses did not cause significant impairment.

The absence of medical opinion evidence is not alone a sufficient basis for reversal where "the record includes evidence from a treating physician or an examining physician addressing a claimant's particular impairments at issue." *Probst v. Colvin*, No. 4:12CV439 AGF FRB, 2013 WL 950996, at *15 (E.D. Mo. Feb. 22, 2013) (citing *Strongson v. Barnhart*, 361 F.3d 1066, 1071-72 (8th Cir. 2004). Here, the ALJ based her decision on substantial evidence from treating and examining physicians who addressed Perfater's impairments, and found them to be largely mild or unremarkable. *Cf. Harris v. Colvin*, No. 4:13-CV-02313-SPM, 2015 WL 756325, at *5 (E.D. Mo. Feb. 23, 2015) (finding that the record did not contain generally mild or unremarkable findings where the medical evidence revealed severe degenerative disc disease, and doctors recorded abnormal findings, referred plaintiff to a pain management clinic, and indicated surgery would be required). Accordingly, there is at least "some medical evidence" to support Perfater's RFC.

7

*Lauer*, 245 F.3d at 704.  As there was a sufficient amount of medical evidence to support the ALJ's determination, it must stand, even if the record could also support an opposite decision.  *Wright*, 789 F.3d at 852; *Probst*, 2013 WL 950996 at *15.

>    **B.**     **Perfater's Testimony**

Perfater also argues that the ALJ improperly weighed his testimony in concluding that it was not entirely consistent with the medical evidence and other evidence in the record.  Perfater relies on SSR 16–3p for support.[1]  SSR 16–3p superseded a previous ruling, SSR 96–7p, and eliminated the use of the term "credibility."  In doing so, SSR 16–3p clarified that "subjective symptom evaluation is not an examination of an individual's character."  *Id*; *see also, Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, No. 17-12447, 2018 WL 618420, at *3 (11th Cir. Jan. 30, 2018).  However, just as with SSR 96–7, SSR 16–3p incorporates 20 C.F.R. § 404.1529(c)(3), which identifies factors for an ALJ to consider when assessing a claimant's allegations.  Specifically, ALJs are required to consider a claimant's daily activities; the location, duration, frequency, and intensity of symptoms; precipitating and aggravating factors; and the type of medication and other treatment or measures used for the relief of pain and other symptoms.  SSR 16–3p at 14170-71.

The ALJ did not assess Perfater's credibility, and Perfater does not argue that she failed to follow SSR 16–3p.  Instead, Perfater appears to argue that the ALJ's evaluation of his testimony is incorrect.  Specifically, Perfater contends that the ALJ erred in finding that his ability to prepare simple meals, perform some household chores, and push a lawnmower for 15 minutes, to return to work as an assembler in early 2016, and the fact that he took little to no medication were inconsistent with his allegations of severe physical limitations.

---

[1] SSR 16–3p became effective in March 2016, four months before the ALJ issued her decision.

Essentially, Perfater argues that the ALJ should have weighed facts differently, or drawn different conclusions.  This argument is unavailing, however, because "[i]t is not the role of this court to reweigh the evidence presented to the ALJ."  *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) (citing *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2016)).  There is substantial evidence to support the ALJ's findings with regard to the inconsistencies between Perfater's testimony and the evidence of his daily activities.  For example, despite his hand complaints, Perfater was observed performing activities involving handling and fingering, such as picking up a pen, a paper, and a bag, and writing his name with no issue.  Tr. 300.  Perfater also testified that he was capable of pushing a lawn mower for 15 minutes, Tr. 52 and 54, and reported that he prepared simple meals, and performed occasional household chores.  Tr. 229-31.  Therefore, in accordance with SSR 16–3p, the ALJ properly considered Perfater's activities, which demonstrated inconsistencies between the alleged severity of his symptoms and his functional limitations.  *See Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017) (finding that independently taking care of personal needs, driving, shopping, preparing meals, and doing laundry, among other activities, was inconsistent with plaintiff's allegations).

### III.     Conclusion

For the reasons discussed above, the Commissioner's decision is affirmed.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated:  June 19, 2018  
Jefferson City, Missouri

9

Case 4:17-cv-00722-NKL   Document 15   Filed 06/19/18   Page 9 of 9